IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 06-cv-00547-WYD-BNB

CHRISTOPHER MITCHELL, a/k/a ELI-JAH HAKEEM MUHAMMAD,

Plaintiff,

v.

R. WILEY, ADX - Warden,

Defendant.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

This matter is before me on **Defendant's Motion for Summary Judgment** [Doc. #120, filed 3/18/08] (the "Motion"). For the following reasons, I respectfully RECOMMEND that the Motion be GRANTED and that judgment enter in favor of the defendant on all of the plaintiff's claims.

## I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed.R.Civ.P., provides that summary judgment should be rendered

"if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact.  <u>Celotex Corp. v. Catrett</u>, 447 U.S. 317, 323 (1986).  "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."  <u>Trainor v. Apollo Metal Specialties, Inc.</u>, 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial.  <u>Celotex</u>, 447 U.S. at 324.  Only admissible evidence may be considered when ruling on a motion for summary judgment.  <u>World of Sleep, Inc. v. La-Z-Boy Chair Co.</u>, 756 F.2d 1467, 1474 (10th Cir. 1985).

## II.  UNDISPUTED MATERIAL FACTS

The plaintiff did not respond to the Motion.[1]  Therefore, the undisputed material facts are taken from the defendant's Motion.  I have considered only those material fact statements that are supported by evidence.

1.  The plaintiff filed his Prisoner Complaint [Doc. #3] (the "Complaint") on March 27, 2006.  At all times material to the allegations of the Complaint, the plaintiff was incarcerated by

---

[1]On June 12, 2008, I denied the plaintiff's third motion for an extension of time to respond to the defendant's motion for summary judgment [Doc. #139].  In denying his motion, I stated:

> This is the plaintiff's third motion for an extension of time to respond to the defendant's motion for summary judgment.  As the basis for his request, the plaintiff states that he is being "absolute [sic] deprived and denied certain stored legal material."  *Motion*, p. 3.  The plaintiff does not explain the nature of the material he is unable to access, nor does he explain its relevance to this case and to the defendant's summary judgment motion.  Instead, the plaintiff states that good cause for an extension of time may be found in the 39 page attachment to the Motion.  The attachment begins with a five page declaration wherein the plaintiff declares that each of the following 26 documents are true and correct copies of inmate requests to staff members.  The plaintiff does not explain how the inmate requests are relevant to his request for an extension of time.  Indeed, he does not address the inmate requests at all; he merely attaches them to his motion.  As I have previously explained to the plaintiff, it is not a judicial function to examine numerous exhibits in search of support for his motions.  *Order issued April 28, 2008* [Doc. #131].  Rather, it is the litigants' responsibility to provide the court with concise arguments, relevant facts, and specific citations to authorities and supporting evidence.  Toth v. Gates Rubber Co., 2000 WL 796068, *8 (10th Cir. 2000).

The plaintiff has not sought any further extensions of time to respond to the Motion, nor has he attempted to provide the Court with a description of the material he is unable to access and its relevance to the defendant's Motion.

the Bureau of Prisons ("BOP") at the United States Penitentiary, Administrative Maximum ("ADX"), in Florence, Colorado.

2. From March 1, 2001, to August 23, 2002, a publication titled The Final Call was sent to the plaintiff on thirteen separate occasions. *Motion*, ¶¶ 3-28 and Exs. 1-13. The publications were all rejected by the Warden or the Associate Warden on the basis that the publications contained information about other inmates which was determined to be detrimental to the institution's security, good order, and discipline. Id. On May 3, 2001, and June 13, 2002, the plaintiff filed grievances at the institutional level regarding rejections of The Final Call, then appealed the denial of those grievances on the regional and national levels. Id. at ¶¶ 59-63; *Complaint*, Doc. #3, pp. 26-27; Doc. #3-1, p. 1; and Doc. #3-2, pp. 3-5.

3. From August 30, 2004, until January 7, 2005, The Final Call was sent to the plaintiff on numerous occasions. *Motion*, ¶¶ 29-46 and Exs. 14-22. The publications were all rejected by the Warden on the basis that the publications were not received from a publisher, a book club, or a book store. Id.

4. On April 17, 2006, The Final Call was sent to the plaintiff and rejected by the Associate Warden on the basis that it contained information about an incarcerated individual and was determined to be "detrimental to the security, good order, or discipline of the institution." Id. at ¶¶ 47-48 and Ex. 23.

5. On June 11, 2006, The Final Call was sent to the plaintiff and rejected by the Warden because it contained demonstrations on Martial Arts techniques which were determined to be "detrimental to the security, good order, or discipline of the institution" and "not suited for introduction into a correctional facility." Id. at ¶¶ 49-50 and Ex. 24.

6.  On November 23, 2004, and July 29, 2005, GQ magazines were sent to the plaintiff and rejected by the Warden because they contained advertisement stickers and were determined to be "detrimental to the security, good order, or discipline of the institution" and "not suited for introduction into a correctional facility."  Id. at ¶¶ 51-54 and Exs. 25-26.

7.  On August 23, 2004, the publication "Prison Legal News" was sent to the plaintiff and rejected by the Warden because it contained information on federal inmates and was determined to be "detrimental to the security, good order, or discipline of the institution" and "not suited for introduction into a correctional facility."  Id. at ¶¶ 55-56 and Ex. 27.

8.  On June 24, 2005, a book entitled "Lucasville" was sent to the plaintiff and rejected by the Warden because it contained information which "could jeopardize the security of the institution" and was determined to be "detrimental to the security, good order, or discipline of the institution" and "not suited for introduction into a correctional facility."  Id. at ¶¶ 57-58 and Ex. 28.  Lucasville concerns a violent riot that took place at a prison in Lucasville, Ohio, in which prison groups such as Muslims and Aryan Brotherhood gang members worked together. Id. at Ex. 35, 62:15-63:3.

9.  The plaintiff was denied outside recreation until outside recreation cages were built. Id. 48:2-16.  Until they were built, the inmates had to take their recreation time inside the building.  Id. at 50:9-16.

10.  The plaintiff currently obtains The Final Call from the Chaplain or another inmate. Id. at 25:4-25.

The Complaint asserts eleven claims pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  The claims may be summarized as follows:

1.   Claim One alleges that the defendant banned delivery of a Muslim newspaper entitled The Final Call on the basis that the newspaper is inmate-to-inmate correspondence.  The plaintiff alleges that all regulations and policies which allow the defendant to ban the newspaper as inmate-to-inmate correspondence violate the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  *Complaint*, Doc. #3, pp. 4-5.[2]

2.   Claim Two alleges that the defendant banned delivery of The Final Call on the basis that the newspaper falls under the "publisher-only" rules.  The plaintiff alleges that all regulations and policies which allow the defendant to ban this "financial" newspaper under the "publisher-only" rules violate the First Amendment, RLUIPA, the Equal Protection Clause, and the Establishment Clause.  Id. at pp. 6-7.

3.   Claim Three alleges that the defendant banned congregational prayer of two or more Muslim prisoners and that all regulations and policies upon which defendant relies to ban prayer violate the First Amendment and RLUIPA.  Id. at pp. 8-9.

4.   Claim Four alleges that all regulations and policies upon which defendant relies to deny delivery of Vibe, Cargo, and GQ magazines are unconstitutional.  Id. at pp. 9-10.

5.   Claim Five alleges that the delivery of Prison Legal News is being denied as inmate-to-inmate communication and that all regulations and policies upon which defendant relies to deny delivery of the news are unconstitutional.  Id. at pp. 10-11.

---

[2]The plaintiff has not assigned numbers to the pages of his Complaint.  Therefore, I cite to the page numbers assigned by the Court's docketing system.

6.    Claims Six alleges that delivery of internet mail information is being denied and that all regulations and policies upon which defendant relies to deny the information violate the First Amendment.  Id. at pp. 12-13.

7.    Claim Seven alleges that the ADX prisoners housed in the E, F, and G units are being denied the kind of group recreation that is afforded in the less restrictive ADX programs and that all regulations and policies upon which defendant relies to deny group recreation are unconstitutional.  Id. at pp. 13-14.

8.    Claim Eight alleges that all outside group recreation for the most restricted ADX prisoners is being denied and that all regulations and policies upon which defendant relies to ban the recreation are unconstitutional.  Id. at pp. 14-15.

9.    Claim Nine alleges that inadequately-sized outside recreation cages are being constructed for the ADX general population yards, and that all regulations and policies upon which defendant relies to allow the construction violate the Eighth Amendment.  Id. at pp. 15-16.

10.    Claim Ten alleges that a book entitled Lucasville is being banned on the basis that it contains information which may jeopardize the security of ADX and that all regulations and policies upon which defendant relies to ban the book are unconstitutional.  Id. at pp. 17-18.

11.    Claim Eleven alleges that all regulations and policies upon which defendant relies to deny delivery of copies from non-vendor and non-publisher sources are unconstitutional.  Id. at pp. 18-19.[3]

---

[3]To the extent the plaintiff attempts to bring other claims, those claims are unintelligible and will not be recognized.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

The plaintiff seeks declaratory and injunctive relief.  Id. at pp. 1-19, 24.  The allegations

of Claims Seven and Eight regarding violations of equal protection rights have been dismissed

for failure to state a claim upon which relief can be granted [Doc. #80].

### III.  ANALYSIS

 All of the plaintiff's claims are asserted pursuant to Bivens v. Six Unknown Named

Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  Id. at p. 3.  Claims One, Two, and

Three are also asserted under the Religious Land Use and Institutionalized Persons Act

("RLUIPA").

### A.  Statute of Limitations

The defendant asserts that to the extent Claim One's allegations under Bivens involve

incidents that occurred prior to March 2004, the claim is barred by the statute of limitation.

Motion, p. 19.  Bivens actions, like civil rights actions asserted pursuant to 42 U.S.C. § 1983, are

subject to the statute of limitation of the state in which the action arose applicable to general

personal injury claims.  See Industrial Constructors Corp. v. United States Bureau of

Reclamation, 15 F.3d 963, 968 (10th Cir. 1994).  Colorado law establishes a two-year limitation

period for such actions.  See section 13-80-102, C.R.S.; Blake v. Dickason, 997 F.2d 749, 750

(10th Cir. 1993) (applying § 13-80-102 to § 1983 claim).  Federal law determines when a cause

of action accrues.  Industrial Constructors Corp., 15 F.3d at 968. "The statute of imitations

begins to run when the plaintiff knows or has reason to know of the existence and cause of the

injury which is the basis of his action."  Id. at 969.

Claim One alleges constitutional violations resulting from the defendant's rejection of

The Final Call on the basis that it constituted inmate to inmate communication.  The Final Call

was rejected on this basis from March 1, 2001, to August 23, 2002. The plaintiff knew or should have known that he was not receiving The Final Call because Notifications were sent to him with each rejection. *Motion*, Exs. 1- 13. Therefore, the statute of limitation expired on these claims no later than August 23, 2004. The plaintiff initiated this case on March 27, 2006.[4] Absent tolling, the alleged constitutional violations based on these incidents are barred by the statute of limitations.

The applicability of equitable tolling is also governed by Colorado state law. <u>Garrett v. Fleming</u>, 362 F.3d 692, 697 (10th Cir. 2004) (applying Colorado's equitable tolling rules to the statute of limitations in a Bivens action). Colorado's equitable tolling provisions are "limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." <u>Dean Witter Reynolds, Inc. v. Hartman</u>, 911 P.2d 1094, 1099 (Colo. 1996). The plaintiff does not argue that he is entitled to equitable tolling.

I respectfully RECOMMEND that the Motion be granted insofar as it seeks summary judgment on Claim One's allegations under <u>Bivens</u> which involve rejections of The Final Call occurring prior to March 2004.

---

[4]I am aware that the prison mailbox rule applies to an inmate's filing of a civil rights complaint. <u>Price v. Philpot</u>, 420 F.3d 1158, 1164 (10th Cir. 2005). Under the mailbox rule, "an inmate who places a federal civil rights complaint in the prison's internal mail system will be treated as having 'filed' that complaint on the date it is given to prison authorities for mailing to the court." <u>Id.</u> at 1165. However, the inmate must establish actual use of the prison's internal mail system in order to be accorded the benefits of the mailbox rule. <u>Id.</u> The inmate bears the burden of proof on this issue. <u>Id.</u> The plaintiff does not provide any argument or evidence to establish that the mailbox rule applies to his case.

## B. Qualified Immunity

The defendant asserts that he is entitled to qualified immunity on all of the plaintiff's

claims. *Complaint*, p. 32.

> Qualified immunity protects from litigation a public official whose
> possible violation of a plaintiff's civil rights was not clearly a
> violation at the time of the official's actions. It is an entitlement
> not to stand trial or face the other burdens of litigation. The
> privilege is an immunity from suit rather than a mere defense to
> liability. When a defendant asserts the defense of qualified
> immunity, the burden shifts to the plaintiff to overcome the
> asserted immunity. The plaintiff must first establish that the
> defendant's actions violated a constitutional or statutory right. If
> the plaintiff establishes a violation of a constitutional or statutory
> right, he must then demonstrate that the right at issue was clearly
> established at the time of the defendant's unlawful conduct.

Ahmad v. Furlong, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations

omitted).

This two-part burden is a heavy one, and it must be met before the defendant bears his

initial burden on summary judgment:

> A summary judgment decision involving the defense of qualified
> immunity is reviewed "somewhat differently" from other summary
> judgment rulings. When a defendant raises the issue of qualified
> immunity, the plaintiff must satisfy a two-part test. First, the
> plaintiff must demonstrate that the defendant's actions violated a
> constitutional or statutory right. Second, the plaintiff must show
> that the constitutional or statutory right the defendant allegedly
> violated was clearly established at the time of the conduct at issue.
> A right is clearly established only if there is a Supreme Court or
> Tenth Circuit decision on point, or the clearly established weight
> of authority from other courts has found the law to be as the
> plaintiff maintains. Only if the plaintiff establishes both elements
> of the test does the defendant bear the traditional burden of
> showing that there are no genuine issues of material fact and that
> he or she is entitled to judgment as a matter of law.

Scull v. New Mexico, 236 F.3d 588, 595 (10th Cir. 2000) (internal quotations and citations omitted).

### 1. Claims One and Two

In Claim One, the plaintiff alleges violations of the First Amendment and RUILPA based on the regulations and policies which allow the defendant to deny delivery of The Final Call on the basis that it is inmate-to-inmate correspondence. In Claim Two, the plaintiff alleges violations of the Constitution, RLUIPA, the Equal Protection Clause, and the Establishment Clause based on the regulations and policies which allow the defendant to deny delivery of The Final Call under the publisher-only rule.

Because The Final Call is a religious publication, *Motion*, Ex. 35, 22:5-14, and because the plaintiff also invokes RLUIPA in Claims One and Two, I construe Claims One and Two as asserting First Amendment claims for violations of the right to the free exercise of religion.

The First Amendment to the United States Constitution provides, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. Although inmates retain First Amendment rights, those rights are not without reasonable limitations. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives--including deterrence of crime, rehabilitation of prisoners, and institutional security." Id. In addition:

> In considering the appropriate balance of these factors, we have often said that evaluation of penological objectives is committed to the considered judgment of prison administrators, who are actually charged with and trained in the running of the particular institution under examination. To ensure that courts afford appropriate deference to prison officials, we have determined that prison

11

> regulations alleged to infringe constitutional rights are judged
> under a "reasonableness" test less restrictive than that ordinarily
> applied to alleged infringements of fundamental constitutional
> rights.  We recently restated the proper standard: When a prison
> regulation impinges on inmates' constitutional rights, the
> regulation is valid if it is reasonably related to legitimate
> penological interests.  This approach ensures the ability of
> corrections officials to anticipate security problems and to adopt
> innovative solutions to the intractable problems of prison
> administration and avoids unnecessary intrusion of the judiciary
> into problems particularly ill suited to resolution by decree.

Id. at 349 (internal quotations and citations omitted).

In order to establish a constitutional violation of his right to free exercise of religion, the

plaintiff bears the initial burden of demonstrating that the restriction substantially burdened his

sincerely held religious beliefs.  Boles v. Neet, 486 F.3d 1177, 1182 (10th Cir. 2007).  The

Supreme Court has defined a "substantial burden" as one that "put[s] substantial pressure on an

adherent to modify his behavior and to violate his beliefs,"  Thomas v. Review Bd. of Ind.

Employment Sec. Div., 450 U.S. 707, 718 (1981), or one that forces a person to "choose between

following the precepts of her religion and forfeiting [governmental] benefits, on the one hand,

and abandoning one of the precepts of her religion . . . on the other hand."  Sherbert v. Verner,

374 U.S. 398, 404 (1963).  The definition of substantial burden does not include "incidental

effects of government programs, which may make it more difficult to practice certain religions

but which have no tendency to coerce individuals into acting contrary to their religious beliefs."

Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 450-51 (1988).

If the plaintiff demonstrates a substantial burden, the defendants then bear "the relatively

limited burden of identifying the legitimate penological interests that justif[ied] the impinging

conduct." Boles, 486 F.3d at 1182.  The burden then returns to the plaintiff to show that the prison's interests were irrational.  Kay v. Bemis, 500 F.3d 1214, 1219 n.2. (10th Cir. 2007).

In evaluating the prison's interests, the court is guided by the four factors identified in Turner v. Safley, 482 U.S. 78, 89-91 (1987), to determine whether the restriction was reasonable. Kay, 500 F.3d at 1218-19.  The factors are: (1) the existence of a rational connection between the restriction and a legitimate penological interest advanced as its justification; (2) the presence of alternatives for the inmate to exercise the right; (3) the effect that elimination of the restriction would have on guards, other prisoners, and prison resources; and (4) the existence of alternatives for prison officials without restricting inmates' rights to religious expression.  Boles, 486 F.3d at 1181.

The plaintiff has not made any showing that the defendant's rejection of The Final Call substantially burdened his sincerely held religious beliefs.  Nevertheless, the defendants have identified legitimate penological interests that justify the regulations and policies which require rejection of publications as either inmate-to-inmate correspondence or under the publisher-only rules.

Todd Javernick, ADX Case Manager Coordinator, attests to the following:

1.  Pursuant to 28 C.F.R. § 540.71 and Program Statement 5266.10, inmates at medium security, high security, and administrative institutions may receive soft-cover publications only from the publisher, a book club, or a bookstore.  *Motion*, Ex. 36, ¶ 3.

2.  The reason for the regulation is to increase security at BOP institutions.  Limiting soft cover publications to those mailed from publishers or approved vendors greatly reduces the chances that contraband will be smuggled into the institutions because publishers and vendors

13

are less likely to do so as opposed to an inmate's friends or family. The presence of contraband threatens the security and orderly administration of the institution. Staff members examine all incoming mail manually and with x-ray scanners, but these methods are not very effective for identifying non-metallic contraband or for detecting drugs. Other methods for examining mail are cost prohibitive and no particular type of devise is technically suited for all types of drug contraband, and ADX does not have sufficient time or staff to thoroughly and manually review each publication received from the inmates' friends or family members. Id. at ¶¶ 4-5.

3. Inmates may receive publications from authorized sources or they may borrow books from the prison leisure library. Id. at ¶ 4.

4. The publisher-only rule is content neutral. Id. at ¶ 6. It does not target a certain type of publication; it restricts the sources from which publications may originate. Id.

5. Institution Supplement 5265.11B and Program Statement 5265.11 prohibit inmates from engaging in inmate-to-inmate correspondence. Inmates may only communicate with inmates in other institutions if they are family members or are parties or witnesses in a legal action in which both inmates are involved. This restriction is designed to maintain institution security. Id. at ¶ 7.

6. Inmates often try to circumvent this restriction by using a magazine publication to convey messages to inmates in other institutions. Articles in publications may also reveal inmate locations or affiliations. Inmates may use this form of communication to convey escape plans, arrange assaults or hits, or carry on criminal enterprises or gang activity. This type of activity can affect staff and inmates at several BOP institutions. Id.

The defendant has demonstrated that security is the legitimate penological interest that justifies the regulations and policies which allow prison staff to reject publications under the publisher-only rule and as inmate-to-inmate correspondence. Had the plaintiff made a showing of a substantial burden, the burden would now shift to back to the plaintiff to show that the prison's interests are irrational. The plaintiff has not addressed his burden to show that the prison's legitimate interests are irrational. Therefore, I respectfully RECOMMEND that summary judgment enter in favor of the defendant on the allegations of Claim One and Claim Two of First Amendment violations.

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability" unless the government demonstrates that the burden is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). The term "substantial burden" under RLUIPA is no broader than the Supreme Court's articulation of that term. Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 661 (10th Cir. 2006).

A plaintiff must "produce[] prima facie evidence to support a claim alleging a violation" of the Free Exercise Clause of the First Amendment or a violation of RLUIPA. Id. at § 2000cc-2(b). The government bears "the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether [the challenged practice] substantially burdens the plaintiff's exercise of religion." Id. As noted above, the plaintiff does not address how (or whether) the inmate-to-inmate restriction and the publisher-only restriction substantially burden his exercise of religion. Therefore, I respectfully RECOMMEND that

summary judgment enter in favor of the defendant on the allegations of Claims One and Two of RLUIPA violations.

Claim Two further alleges that the publisher-only restriction violates the plaintiff's equal protection rights and the Establishment Clause. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (quotations and citation omitted). To sustain a claim under the Equal Protection Clause, the plaintiff must make a prima facie showing that he was treated differently from others who are similarly situated and that the acts forming the basis of the claim were motivated by a discriminatory purpose. Marshall v. Columbia Lea Reg'l Hosp., 345 F.3d 1157, 1179 (10th Cir. 2003). The Establishment Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. "At its core, the Establishment Clause enshrines the principle that government may not act in ways that 'aid one religion, aid all religions, or prefer one religion over another.'" Snyder v. Murray City Corp., 159 F.3d 1227, 1230 (10 th Cir. 1998) (quoting Lee v. Weisman, 505 U.S. 577, 600 (1992). The plaintiff does not allege any facts, nor does he produce any evidence, which would invoke the Equal Protection Clause or the Establishment Clause.

The plaintiff has failed to meet his requisite burdens as to Claims One and Two. I respectfully RECOMMEND that the Motion be GRANTED insofar as it seeks summary judgment in favor of the defendant on Claims One and Two.

### 2. Claim Three

In Claim Three, the plaintiff alleges that all regulations and policies which allow the defendant to ban congregational prayer of two or more Muslim prisoners are in violation of the First Amendment and RLUIPA.  As with Claims One and Two, the plaintiff has not met his burden to demonstrate how (or whether) the ban on congregational prayer substantially burdens the his exercise of religion.  I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks summary judgment in favor of the defendant on Claim Three.

### 3. Claim Four

Claim Four alleges that all regulations and policies relied upon by the defendant to deny delivery ov Vibe, Cargo, and GQ magazines are unconstitutional.  I construe Claim Four to assert a violation of the plaintiff's First Amendment right to free exercise of speech.

A prison official's regulation of access to publications is valid if it is reasonably related to legitimate penological interests.  Thornburgh v. Abbott, 490 U.S. 401, 413 (1989).  The Court must consider and balance the Turner factors in making this determination.  Id.  As discussed above, these factors are: (1) "whether the governmental objective underlying the regulations at issue is legitimate and neutral, and [whether] the regulations are rationally related to that objective;" (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) "the impact that accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison;" and (4) whether there exists "an obvious, easy" alternative.  Id. at 414, 417, 418.  See also Jones v. Salt Lake County, 503 F.3d 1147, 1153-54 (10th Cir. 2007).

The undisputed evidence shows that on November 23, 2004, and July 29, 2005, GQ Magazines were sent to the plaintiff and rejected by the Warden because they contained advertisement stickers and were determined to be "detrimental to the security, good order, or discipline of the institution" and "not suited for introduction into a correctional facility." There is no evidence in the record that the plaintiff was denied Vibe magazine or Cargo magazine or that he was denied any other issues of GQ.

Mr. Javernick attests that inmates are not allowed to receive magazine publications which contain contraband. *Motion*, Ex. 36, ¶ 9. Advertisement stickers are considered contraband because inmates can use them to conceal drugs; paste them on windows and cameras and impede the staff's ability to monitor inmate activity; and paste them on the walls to deface them or conceal damage underneath the sticker. Id. Thus, inmates are not allowed to possess stickers in order to maintain institution security. Id. He further attests that staff is unable to remove items or contents from a soft cover publication because it would consume too much time and too many resources, and it runs the risk of damaging the publication and exposing the BOP to liability under the Federal Tort Claims Act for damage to property. Finally, he attests that inmates at ADX are permitted to receive incoming correspondence containing newspaper or magazine clippings from non-commercial sources if, after review, it is determined that the clippings do not pose a threat to institution security and the quantity of materials does not adversely affect the ability of mail from staff to effectively monitor incoming correspondence. Id. at ¶ 10.

Thus, the defendant has demonstrated that prohibiting magazines containing advertisement stickers is rationally related to the legitimate and neutral objective of institutional security. He has further demonstrated that the facility does not have adequate time or resources

to remove the stickers; removing the stickers runs the risk of damaging the publication and exposing the BOP to liability under the Federal Tort Claims Act for damage to property; and that, in the alternative, inmates may receive magazine or newspaper clippings or obtain reading materials from the library. The plaintiff does not dispute these facts, nor does he provide evidence to show the existence of an obvious, easy alternative to the regulation.

I respectfully RECOMMEND that summary judgment be granted in favor of the defendant on Claim Four.

### 4. Claims Five and Eleven

In Claim Five, the plaintiff alleges that delivery of Prison Legal News is being denied as inmate-to-inmate communication and that all regulations and policies which allow such denial are unconstitutional. Claim Eleven alleges that all regulations and policies which allow denial of copies from non-vendor and non-publisher sources are unconstitutional. I construe Claims Five and Eleven as asserting a claim for violation of the plaintiff's First Amendment right to free speech.

As discussed under my analysis of Claims One and Two, the declaration of Mr. Javernick establishes that institutional security is the legitimate and neutral objective underlying the regulations and policies that prohibit inmate receipt of publications on the basis of inmate-to-inmate communications and the publisher-only rule, and that the regulations and policies are rationally related to that objective. Mr. Javernick's declaration also establishes that the absence of restrictions regarding the publisher-only rule would work a hardship on ADX staff because an inmate's friends and family are more likely to insert contraband into publications than are publishers and vendors; accepting publications from friends and family of inmates would require

additional staff and resources in order to manually examine these publications for contraband; the current examination procedures are not particularly effective for identifying drugs; and other devises to assist in examining publications are cost prohibitive and would not expose all types of contraband. The absence of the inmate-to-inmate correspondence restriction would affect staff and inmates at several BOP institutions because inmates can communicate escape plans, arrange assaults or hits, or carry on criminal enterprises or gang activity. Mr. Javernick also attests that alternative means of obtaining publications are available because inmates may receive publications from authorized sources or they may borrow books from the prison library. The plaintiff does not claim that an obvious, easy alternative to the restrictions exists. Accordingly, I respectfully RECOMMEND that summary judgment enter in favor of the defendant on Claims Five and Eleven.

### 5. Claim Six

Claim Six alleges that delivery of internet mail information is being denied and all regulations and policies relied upon to deny the information violate First Amendment. The defendant asserts that this claim is moot because ADX has changed its policy to allow inmates to receive incoming internet materials. *Motion*, pp. 29-30.

Mootness is described by the Tenth Circuit as follows:

> Article III mootness is the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness). A federal court has no power to give opinions upon moot questions or declare principles of law which cannot affect the matter in issue in the case before it. Thus, to be cognizable, a suit must be a real and specific controversy admitting of specific relief through a decree of a conclusive character. *If an event occurs while a case is pending that heals the*

*injury and only prospective relief has been sought, the case must
be dismissed.*

Southern Utah Wilderness Alliance v. Smith, 110 F.3d 724, 727 (10thCir. 1997) (emphasis
added).

Mr. Javernick attests that Institution Supplement 5266.10C provides that materials
printed directly from the internet are treated as general correspondence, and inmates are allowed
to receive such materials in quantities which do not adversely affect the staff's ability to
effectively monitor incoming correspondence for contraband and other threats to institutional
security and good order. *Motion*, Ex. 36, ¶ 11. The plaintiff does not deny that his claim is now
moot. Accordingly,

Accordingly, I respectfully RECOMMEND that the Motion be GRANTED insofar as it
seeks dismissal of Claim Six as moot.

### 6. Claims Seven, Eight, and Nine

Claim Seven alleges that the ADX prisoners housed in the E, F, and G units are being
denied the kind of group recreation that is afforded in the less restrictive ADX programs and that
all regulations and policies upon which defendant relies to deny group recreation are
unconstitutional. Claim Eight alleges that all outside group recreation for the most restricted
ADX prisoners is being denied and that all regulations and policies upon which defendant relies
to ban the recreation are unconstitutional. Claim Nine alleges that inadequately-sized outside
recreation cages are being constructed for the ADX general population yards, and that all
regulations and policies upon which defendant relies to allow the construction violate the Eighth
Amendment.

It is unclear whether the plaintiff is asserting conditions of confinement claims under the Eighth Amendment or whether he is challenging the constitutionality of policies and regulations. In his deposition he clearly states that Claim Eight is brought under the Eighth Amendment, *Motion*, Ex. 35, 48:1-16, although his Complaint addresses the claim solely as a challenge to the constitutionality of policies and regulations. *Complaint*, pp. 14-15. The defendant addresses the claims only in terms of the Eighth Amendment.

This confusion notwithstanding, the plaintiff has not met his burden to show that the denial of group and outdoor recreation and the size of the cages violated a constitutional right or that the right was clearly established at the time of the alleged violations. Therefore, the defendant is not required to bear the traditional burden of showing that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Scully, 236 F.3d at 595. Moreover, Claim Eight's allegations that the plaintiff is denied outside group recreation are moot because the plaintiff admits that he is allowed outdoor recreation. *Motion*, Ex. 35, 48:1-24, 50:1-25, 61:1062:14.

I respectfully RECOMMEND that summary judgment be granted in favor of the defendant on Claims Seven, Eight, and Nine.

### 7. Claim Ten

In Claim Ten, the plaintiff alleges that a book entitled Lucasville was banned on the basis that it contains information which may jeopardize the security of ADX and that all regulations and policies upon which the defendant relied to ban the book are unconstitutional. I construe Claim Ten as a claim for violation of the plaintiff's First Amendment right to free speech.

Mr. Javernick attests that <u>Lucasville</u> is about the events surrounding an eleven day riot at a maximum security Ohio state prison. *Motion*, Ex. 36, ¶ 8. The book discusses how staff members were taken hostage and beaten and how several prison gangs worked together during the siege. <u>Id.</u> Nine prisoners were taken hostage and one correctional officer was killed. <u>Id.</u> The book was determined unsuitable for introduction into ADX because it could pose a threat to security and the orderly running of the institution and could affect inmate animosity toward staff, thus preventing them from effectively performing their duties. <u>Id.</u>

The defendant has established that denying the plaintiff a copy of <u>Lucasville</u> is reasonably related to the legitimate penological interest in maintaining security at ADX. The plaintiff can obtain other suitable reading material through the channels discussed above. I respectfully RECOMMEND that summary judgment enter in favor of the defendant on Claim Ten.

## IV. CONCLUSION

I respectfully RECOMMEND that Defendant's Motion for Summary Judgment be GRANTED and that judgment enter in favor of the defendant on all of the plaintiff's claims.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. <u>In re Key Energy Resources Inc.</u>, 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de*

*novo* review by the district court or for appellate review. <u>United States v. One Parcel of Real Property</u>, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated January 16, 2009.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge